UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:24-CV-00075-GNS-HBB

MICHAEL STUCKERT et al. PLAINTIFFS

v.

WESLEY HICKS DEFENDANT

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 35); Defendant's Motion to Exclude (DN 44); Defendant's Motion for Leave to File Redacted Exhibit (DN 50); and Plaintiffs' Motion for Leave to File a Sur-Reply (DN 51). These motions are ripe for review.

## I. STATEMENT OF FACTS AND CLAIMS

On July 21, 2023, Plaintiff Michael Stuckert ("Mr. Stuckert") and his wife, Plaintiff Renee Stuckert ("Mrs. Stuckert"), (collectively "Plaintiffs") were fired from their jobs at Mammoth Valley Park in Cave City, Kentucky. (R. Stuckert Dep. 15:25-16:17, Mar. 10, 2025, DN 39; Towe Dep. 8:2-6, Dec. 12, 2025, DN 40). That same evening, Mr. Stuckert attempted to call each of Mammoth Valley Park's three owners multiple times, but he was only able to speak with Jason Towe ("Towe"). (M. Stuckert Dep. 58:4-59:17, Mar. 10, 2025, DN 38). Mr. Stuckert spoke to Towe on the phone at least three times, threatening him, to which Towe responded that Mr. Stuckert should stop calling him or else it would not end well. (Towe Dep. 10:11-11:8; M. Stuckert Dep. 58:7-19; Hicks Dep. 42:14-25, Mar. 10, 2025, DN 37).

Following these calls, the Mammoth Valley Park owners requested a police officer go to Plaintiffs' home to retrieve a business facility key and inform them that they were banned from the Mammoth Valley Park property. (Towe Dep. 11:16-12:4). Officer Wesley Hicks ("Hicks") was

dispatched to perform the courtesy. (Hicks Dep. 31:14-18). When Hicks arrived at the home around 10:00 p.m., he either knocked on the door or rang the doorbell, then stepped off the sidewalk to stand beside the door in a "tactical position," but did not announce himself as a police officer. (Hicks Dep. 31:25-33:4). Mrs. Stuckert heard the knock and answered the door, but initially did not see Hicks standing off the sidewalk. (R. Stuckert Dep. 25:13-20). Mr. Stuckert approached the door and stood behind his wife, gun in hand. (M. Stuckert Dep. 59:20-60:5).

Following this point, accounts of events diverge. Mr. Stuckert alleges that there was some commotion outside and when he realized it was the police at his door, he set his gun on top of an aquarium which was right beside the door. (M. Stuckert Dep. 60:5-9, 62:6-22; Def.'s Mot. Summ. J. Ex. A, at 1, DN 35-1). Hicks moved quickly back from the front door, demanded that the gun be dropped, and ordered Mr. Stuckert to get on the ground. (Hicks Dep. 38:9-19). Mr. Stuckert complied without issue, and after more officers arrived on scene, he was arrested and transported to the Barren County Jail. (Hicks Dep. 38:20-24; M. Stuckert Dep. 67:5-7, 71:19-22). Mr. Stuckert spent the night in jail and was released the next day. (M. Stuckert Dep. 72:20-73:2).

Hicks cited Mr. Stuckert with wanton endangerment second degree, but he was ultimately acquitted by a jury. (Def.'s Mot. Summ. J. Ex. B, at 1, DN 35-2; M. Stuckert Dep. 79:7-10). Following the events of July 21, Hicks received oral counseling for failing to properly direct his subordinates—by not keeping them calm and collected during their response to his call for backup—and for muting his body camera while transporting Mr. Stuckert to jail. (Pls.' Resp. Def.'s Mot. Summ. J. Ex. 5, at 78, DN 46-3).

After being acquitted, Plaintiffs brought claims for false arrest under 42 U.S.C. § 1983 and for malicious prosecution, loss of consortium, and assault and battery under Kentucky state law. (Compl. ¶¶ 9-12, DN 1). It is not clear from the face of Plaintiffs' complaint whether the malicious

prosecution claim is brought under state law or federal law. The distinction is significant because state law requires a showing of malice while federal law does not. *See Carter v. Newby*, No. 5:17-CV-130-TBR, 2018 WL 3432126, at *3 (W.D. Ky. July 16, 2018) ("The crucial difference between [a malicious prosecution] action under § 1983 and one under Kentucky common law is that the former does not require a showing of malice, while the latter does."). Hicks appears to assume that Plaintiffs assert only a state law malicious prosecution claim. (Def.'s Mot. Summ. J. 16). Plaintiffs make no assertion to the contrary and appear to tacitly agree that their claim is brought only under state law. (Pls.' Resp. Def.'s Mot. Summ. J. ¶ 31). The Court will therefore proceed with the analysis on the basis that only a state law malicious prosecution claim has been alleged. Hicks now moves for summary judgment on every claim.

## II. JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because a federal question has been presented based on 42 U.S.C. § 1983. In addition, the Court has supplemental jurisdiction over Plaintiffs' state law claim. *See* 28 U.S.C. § 1367(a).

## III. DISCUSSION

### A. Motion for Summary Judgment

#### 1. *Standard of Review*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Id.* at 251-52. The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case[,]" or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See id.* at 325; *Anderson*, 477 U.S. at 247-48. While the Court must view the evidence in a light most favorable to the non-moving party, it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by 'citing to particular parts of materials in the record' or by 'showing that the materials cited do not establish the absence . . . of a genuine dispute[.]'" *Burlington Ins. Co. v. Greenwood Rollerdrome, Inc.*, 420 F. Supp. 3d 632, 641 (W.D. Ky. 2019) (alterations in original) (quoting *Shreve v. Franklin Cnty.*, 743 F.3d 126, 136 (6th Cir. 2014)). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**2. *False Arrest***

Plaintiffs first bring a claim pursuant to 42 U.S.C. § 1983 for false arrest. In response, Hicks argues that he is entitled to summary judgment based on qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Sixth Circuit has explained the qualified immunity analysis, saying:

> In considering a claim for qualified immunity, we conduct a two-step inquiry. First, we must decide whether the facts viewed in the light most favorable to the plaintiff show that the officer has violated the plaintiff's constitutional right. Second, we determine whether the right in question was clearly established at the time of the violation.

*Al-Lamadani v. Lang*, 624 F. App'x 405, 409 (6th Cir. 2015) (internal citations omitted) (citation omitted). "A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (alternations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

Since Hicks has raised the defense of qualified immunity, Plaintiffs bear the burden of showing that he is not entitled to that immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). To carry their burden, Plaintiffs argue that there was no probable cause for Mr. Stuckert's arrest, and the arrest was a clear violation of his Fourth Amendment rights.

The Sixth Circuit has held that "[i]t is clearly established that arrest without probable cause violates the Fourth Amendment." *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997) (citation omitted). Probable cause, a critical element which must be lacking for a false arrest claim to overcome qualified immunity, exists "if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Regets v. City of Plymouth*, 568 F. App'x 380, 389 (6th Cir. 2014)

(alteration in original) (quoting *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir.2011)). "The probable cause examination . . . requires an objective review of the undisputed facts and consideration of how they would be perceived by an objectively reasonable officer at the scene." *Akima v. Peca*, 652 F. Supp. 3d 848, 861-62 (E.D. Mich. 2023).

The officer's subjective perception of the evolving situation is not irrelevant, however, as a "seizure may be permissible even though the justification for the action includes a *reasonable* factual mistake." *Id.* at 862 (citation omitted). In summary, "'[a] [police officer] is entitled to qualified immunity' on a false arrest . . . claim 'if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the [police officer].'" *Regets*, 568 F. App'x at 389 (quoting *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011) (second and fourth alterations in original).

Even when construing the facts in a light most favorable to the plaintiffs, Hicks reasonably concluded that he had probable cause to arrest Mr. Stuckert for the crime of second-degree wanton endangerment. In Kentucky, "[a] person is guilty of wanton endangerment in the second degree when he wantonly engages in conduct which creates a substantial danger of physical injury to another person." KRS 508.070. According to Plaintiffs, because they were initially unsure about who was at the door, Mr. Stuckert stood behind his wife holding a gun. (M. Stuckert Dep. 59:20-60:5). Once he realized it was a police officer, he lifted his gun to set it on an aquarium which was directly beside the doorway. (M. Stuckert Dep. 60:8-9). It is heavily debated whether Mr. Stuckert pointed the gun at Hicks or whether he adopted a "shooting stance."[1]

[1] On this point, the body camera footage is inconclusive. While Plaintiffs repeatedly contend that the recording "clearly" shows that a gun was never pointed at Hicks, the recording itself does not reflect that conclusion. (Pls.' Resp. Def.'s Mot. Summ. J. ¶¶ 11, 32, 37). Instead, much of the recording is dark and blurry, and during crucial moments immediately preceding Hicks's sudden reaction, Plaintiffs are either partially or fully excluded from the frame. (Body Cam – Hicks 1, at

Even if he did not, however, it is clear from Hicks's body camera recording that he reacted suddenly to what he saw. (Body Cam – Hicks 1, at 01:20, Apr. 27, 2026, DN 36). Mr. Stuckert concedes that he was holding a gun, that he was standing behind his wife at the door while holding his gun, and that he finally lifted that gun to set it on an aquarium beside the door. It is not unreasonable for Hicks to have seen that movement and believe that the gun was being pointed at him, particularly because he was responding to a call at night where threats of violence had been reported. Kentucky courts have unambiguously held that pointing a gun at any person constitutes wanton endangerment. *Key v. Commonwealth*, 840 S.W.2d 827, 829 (Ky. App. 1992). When Hicks witnessed the facts as recounted by Plaintiffs, he reasonably believed he saw Mr. Stuckert point a gun at him. Based on that evidence, Hicks reasonably believed he witnessed the crime of wanton endangerment and had probable cause to arrest, even if he was mistaken about what actually occurred. Hicks is therefore entitled to qualified immunity for the federal false arrest claim because an arrest with probable cause is lawful. *See Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) ("[A]n arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *United States v. Abdi*, 463 F.3d 547, 557 (6th Cir. 2006) (an arrest "is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed."); KRS 431.005(1)(d) ("A peace

---

01:16-01:20, Apr. 27, 2026). No gun can be seen despite the fact that Mr. Stuckert was undisputedly holding one. The body camera footage shows Hicks' startled reaction, and he exclaimed immediately to dispatch that "he [Mr. Stuckert] just pointed at a gun at me!" (Body Cam – Hicks 1, at 01:18-01:26). Even Mr. Stuckert did not initially deny pointing at his gun at Hicks, stating: "We're being threatened. . . . I didn't point [the gun] at **you**, as soon as I saw I backed off because I thought it was Jason Powell." (Body Cam – Hicks 1, at 01:53-02:10 (emphasis in original)).

officer may make an arrest: . . . Without a warrant when a misdemeanor . . . has been committed in his or her presence . . . .").

More specifically, Plaintiffs argue that probable cause did not exist because Hicks lied about what he saw and that lie formed the sole basis for probable cause. (Pls.' Resp. Def.'s Mot. Summ. J. ¶¶ 26-30). "Falsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional . . . ." *Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002). Hicks's allegedly false statement, however, is not itself what formed the basis for probable cause. Hicks's statement did not contribute to the probable cause analysis as in a situation in which he was trying to obtain an arrest warrant after the fact. Instead, in this scenario, probable cause is based on the events he personally witnessed, and what an objective officer would have perceived, not a statement he later made about those events. To be sure, there is significant disagreement about whether a gun was pointed at Hicks, but the analysis of probable cause for the purposes of this false arrest claim is not predicated on the truthfulness of Hicks's later recounting of what occurred. There is no question Mr. Stuckert had a gun in his hand; the ultimate issue is whether Hicks could have objectively believed, even mistakenly, the gun was pointed at him. *See Akima*, 652 F. Supp. 3d at 861-62. Under the circumstances, an objective officer certainly could have perceived a gun pointed at him. Given that Plaintiffs have the burden of showing Hicks is *not* entitled to qualified immunity, and they have not done so, he is entitled to qualified immunity on the false arrest claim because he had probable cause for the arrest and therefore did not violate a constitutional right. Accordingly, summary judgment is granted.

### 3. *Malicious Prosecution*

Plaintiffs next bring a claim for malicious prosecution under Kentucky law.

> A malicious prosecution action may be established by showing that: 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding,

> . . . against the plaintiff; 2) the defendant acted without probable cause; 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . . ; 4) the proceeding, except in ex parte civil actions, terminated in favor of the person against whom it was brought; and 5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016). Hicks first argues that much like the false arrest claim, he is entitled to qualified immunity against the malicious prosecution claim. Kentucky has, however, removed qualified immunity as a defense for a malicious prosecution claim. *See Id.* at 5 ("The officers also claim they are covered by Kentucky's doctrine of qualified official immunity. We likewise find that defense to be unavailable in a malicious prosecution action . . . ."). *Martin* holds this way because since qualified "[o]fficial immunity is unavailable to public officers who acted '*with the malicious intention* to cause a deprivation of constitutional rights or other injury . . . ,'" and malicious prosecution requires proving the element of malice, proving malice necessarily defeats qualified immunity. *Id.* (quoting *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001)). "Therefore, in the context of a malicious prosecution claim against state law enforcement officers, the issue of qualified official immunity is superfluous." *Id.* at 5-6.

Even though the qualified immunity defense is unavailable, Hicks may still succeed on summary judgment if the undisputed material facts resolve even one of the five elements of malicious prosecution in his favor. Because there is no genuine, material dispute about the facts giving rise to probable cause, summary judgment may be granted.

**a. Probable Cause**

The crux of a malicious prosecution case is the existence or lack of probable cause. "Since public policy favors the exposure of crime, and malicious prosecution actions are not favored in the law, there must be a clear showing that the defendant acted without probable cause." *Reid v. True*, 302 S.W.2d 846, 847-48 (Ky. 1957) (citation omitted). Probable cause is the critical element

of a malicious prosecution case because its existence "is a complete defense." *Louisville & N. R. Co. v. Sharp*, 140 S.W.2d 383, 384 (1940). To prevail in a malicious prosecution action, the plaintiff's innocence must have been so clear "that there were no just grounds or probable cause to suspect his guilt" in the first place. *Lancaster v. McKay*, 45 S.W. 887, 889 (1898). Furthermore, if probable cause exists, "then howsoever maliciously the prior litigation might have been instituted by [the] defendant no malicious prosecution action is sustainable." *Lexington Cab Co. v. Terrell*, 137 S.W.2d 721, 724 (1940).

"[T]he definitive statement on probable cause is that it 'exists where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Master*, 706 S.W.3d 140, 148 (Ky. 2024) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "Only the probability, and not a prima facie showing, of criminal activity is the standard . . . ." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983). "Probable cause is a low bar." *Frenchko v. Monroe*, 160 F.4th 784, 796 (6th Cir. 2025) (internal quotations omitted) (citations omitted). "Where sufficient undisputed facts show probable cause, the question is one of law for the court." *Reid*, 302 S.W.2d at 848.

The undisputed facts here are sufficient to show probable cause. On the night of the incident, Hicks approached and knocked on the front door of the home of a person who had previously made threats of violence against his former employer. (Hicks Dep. 42:14-25). A woman then answered the door while a man stood behind her. The man was holding a gun while the door was open and when he realized it was a police officer outside, he lifted the gun and set it on an aquarium beside the door. It is, of course, disputed whether the gun was ever pointed at Hicks, but the only fact clear from the body camera footage that Hicks saw the gun in some way,

made the immediate decision to retreat from the door, and told dispatch a gun had been pointed at him. (Body Cam – Hicks 1, at 1:20, Apr. 27, 2026). Plaintiffs do not dispute that Mr. Stuckert was holding a gun at the door, nor do they argue that it was impossible for Hicks to see that gun.

A recently decided Kentucky Court of Appeals case, *Walters v. Bradley*, No. 2024-CA-1247-MR, 2026 WL 2616968 (Ky. App. Sep. 4, 2026), shares some critical facts with the present case and, while not identical, is instructive. In *Walters*, the defendant accused the plaintiff of pointing a gun at him and was advised by his attorney to report the conduct to the police. *Id.* at *1. The defendant did so and signed an affidavit stating that the plaintiff had pointed a gun at him. *Id.* This affidavit resulted in the plaintiff's arrest for second degree wanton endangerment, for which he was later acquitted. The plaintiff then sued the defendant for malicious prosecution, claiming he never pointed a gun at the defendant. *Id.* at *3. The Court of Appeals ultimately held that summary judgment was appropriate on the issue of probable cause, despite the disagreement over whether a gun was pointed at anyone. *Id.* at *4. In reaching this conclusion, the court said:

> [The plaintiff] cannot make a showing that his arrest warrant contained false statements or that untrue or incomplete facts were relayed to counsel. Therefore, he failed to create a genuine issue of material fact to create a jury question on the issue he was required to prove—that [the defendant] lacked probable cause to initiate the proceeding. There was probable cause and the motion for summary judgment eliminated all genuine issue regarding that fact.

*Id.*

Similar to *Walters*, Plaintiffs' sole argument that probable cause did not exist is that Hicks intentionally lied about what he saw and that no gun was ever pointed at him. As noted above, Hicks moved rapidly away from the front porch while reporting to dispatch that Mr. Stuckert had just pointed a gun at him, which Mr. Stuckert explained by saying "we're being threatened." Although Mr. Stuckert's gun is not apparent in Hicks' body camera footage, there is no question that Mr. Stuckert had a gun in his hand at the door. Based on the undisputed facts, a reasonable

officer in Hicks's position could have believed a gun was pointed at him and furthermore, beyond Plaintiffs' disagreement with his perception of events, there is no evidence that Hicks relayed false statements in his arrest citation. Their disagreement alone does not create a jury question on the issue of probable cause.

To be sure, this is a close case, but probable cause is not a difficult bar to clear and it "exists if there is a *reasonable basis* for belief that a person committed a particular crime." *Estep v. Combs*, 467 F. Supp. 3d 476, 487 (E.D. Ky. 2020) (citation omitted). The probable cause standard requires even less evidence than is sufficient to establish a prima facie case at trial, and much less evidence than is necessary to establish guilt beyond a reasonable doubt. *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998) (citation omitted). To establish probable cause, the law does not require that every conceivable explanation other than illegal conduct be ruled out. *Id.* A reasonable man facing Hicks's circumstances with his factual knowledge could have believed that an offence had been committed. Hicks therefore had probable cause.

Because the existence of probable cause is a complete defense and will prevent a malicious prosecution claim from being established no matter how malicious the initiation of the proceedings were, Plaintiffs' claim must be dismissed, even if they were able to establish that Hicks initiated, continued, or procured the proceedings with malicious intent. Therefore, summary judgment is granted.

**4. *Loss of Consortium***

Mrs. Stuckert finally brings a claim for loss of consortium due to the separate injuries suffered by her husband. (Compl. ¶ 11). "[A]n action for loss of consortium is a distinct and independent cause of action from that which may be sought by the injured spouse." *Angelet v. Shivar*, 602 S.W.2d 185, 185 (Ky. App. 1980) (citation omitted). "Under Kentucky law, loss of

consortium . . . is derivative of the underlying claim." *Terry v. Ethicon, Inc.*, No. 1:19-CV-00175-GNS, 2022 WL 468051, at *4 (W.D. Ky. Feb. 15, 2022) (citing *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 685 (E.D. Ky. 2013) (applying Kentucky law). To be liable for loss of consortium, Hicks would have to be liable on the underlying claim, that is, the false arrest or malicious prosecution claim. *See id.* Because summary judgment has been granted on the underlying claims and Hicks is not liable to Mr. Stuckert for any injury, he cannot be liable to Mrs. Stuckert for loss of consortium either. Accordingly, summary judgment is granted regarding loss of consortium.

#### 5. *Assault and Battery*

Although the Complaint also alleges assault and battery claims, neither the summary judgment motion nor the response discuss it. (Compl. ¶ 12). Regardless, because the false arrest claim is being dismissed on the grounds of probable cause, the assault and battery claims, which are derivative of the false arrest claim, must be similarly dismissed. In discussing the torts of assault and battery in relation to false arrest claims, the Kentucky Court of Appeals has explained:

> [I]n an action for . . . false arrest, or assault or battery arising in the course thereof, the focus is on whether the peace officer had reasonable grounds to believe and did believe in good faith that the plaintiff had committed an arrestable offense, and whether the officer used excessive force in making the arrest. The officer is liable for false arrest and battery if he lacked reasonable grounds for the arrest, or if the officer had a reasonable basis for the arrest but used more force than was necessary.

*Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 31 n.7 (Ky. App. 2016). As already discussed at length, Hicks had a good faith belief that he had probable cause for his arrest of Mr. Stuckert. He did not lack reasonable grounds for the arrest and there are no allegations, of a use of excessive force. Therefore, if any assault and battery claims remain, they must be dismissed.

### B. Motion to Exclude

Hicks next moves to exclude the testimony of Plaintiffs' expert witness Sandra Walker Nichols, Ph.D., APRN ("Nichols"). (Def.'s Mot. Exclude Test., DN 44). Nichols admits that she

has no personal knowledge of the events which occurred on July 21, 2023, nor did she review Hicks's deposition when forming her medical opinions. (Nichols Dep. 43:7-23, Jan. 14, 2026, DN 44-1). Her testimony therefore adds nothing to the probable cause analysis, the issue on which summary judgment is granted. Because summary judgment is granted on all of Plaintiffs' claims and those claims are being dismissed, the motion to exclude is denied as moot.

**C. Motion for Leave to File Redacted Exhibit**

Shortly after filing his replies, Hicks moved for leave to file a redacted exhibit in order to redact the faces of minors from the photographs in the exhibit. (Def.'s Mot. Leave File Redacted Ex., DN 50). This motion is unopposed, but because summary judgment is being granted and the motion to exclude is being denied as moot, this motion is likewise denied as moot.

**D. Motion for Leave to File a Sur-Reply**

Finally, Plaintiffs move for leave to file a sur-reply, arguing that Hicks has raised new arguments and cited additional case law in his reply. The reply with which they take issue is related to the motion to exclude, which has been denied as moot, and not the summary judgment motion which has been discussed. The motion for leave to file a sur-reply will therefore also be denied as moot.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Summary Judgment (DN 35) is **GRANTED** and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

2. Defendant's Motion to Exclude Testimony (DN 44) is **DENIED AS MOOT**.

3. Defendant's Motion for Leave to File a Redacted Exhibit (DN 50) is **DENIED AS MOOT**.

4. Plaintiffs' Motion for Leave to File a Sur-Reply (DN 51) is **DENIED AS MOOT**.

5. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
November 23, 2026

cc: counsel of record